GEORGE G. WILCOX

*v.*

HUNTINGTON W. JACKSON *et al.*

*Filed at Springfield October 1, 1883.*

1. PUBLIC LANDS—*location of half-breed scrip—certificate of, passes title.* A certificate of the commissioner of the general land office, made under the act of Congress of July 17, 1854, showing the location of half-breed, Dakotah or Sioux scrip on certain of the public lands, and that the location thereof was made by the party authorized to do so, is competent evidence in an action to show title in the location, and it is not essential that a copy of the scrip should be attached to and form a part of such certificate.

2. Where it becomes necessary to prove title from the United States under a location of half-breed scrip, a copy of the scrip under which it was made is not material, any more than a copy of the warrant is to an ordinary certificate of entry. Both are used by the holder as a payment for the land entered or located.

3. SAME—*whether half-breed scrip is located on land not subject to location, is a matter of defence.* Where half-breed scrip has been located on public lands of the United States, if the location is on land not subject to private entry or location, as being reserved, it is a matter that must be shown by the party denying its validity.

4. JUDICIAL NOTICE—*whether land located is located in a lake.* While the court takes judicial notice of many things, such as the division of the State into counties, and of the latter into townships, according to the government surveys, it can not take such notice of the fact whether land located under scrip is in a lake which is a navigable body of water, and hence not subject to location.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

This was an action of ejectment, brought by George G. Wilcox, to recover a certain tract of land in Cook county, which it is claimed Julia Gamell (formerly Martin) obtained from the government under an act of Congress approved July 17, 1854, entitled "An act to authorize the President of the United States to cause to be surveyed the tract of land in the territory of Minnesota belonging to the half-breeds or mixed

bloods of the Dakotah or Sioux nation of Indians, and for other purposes." (10 U. S. Stat. at Large, 304.) The plaintiff, to maintain the issues in said cause on his part, offered in evidence the following certificate, purporting to be made by the commissioner of the general land office, and purporting to relate to the location of the land in question:

"GENERAL LAND OFFICE, *May 21, 1878.*

"Reg. Receiver's No. ——— 
　Certificate or Scrip No. 232, Letter E, }
　　　for 160 acres.

"I, Julia Gamell, (formerly Martin,) of Dakotah county, Minn., half-breed or mixed blood of the Dakotah or Sioux nation of Indians, to whom was issued certificates or scrip under and by virtue of the provisions of an act of Congress approved July 17, 1854, entitled 'An act to authorize the President of the United States to cause to be surveyed the tract of land in the territory of Minnesota belonging to the half-breeds or mixed bloods of the Dakotah or Sioux nation of Indians, and for other purposes,' do hereby apply to locate, and do·locate, said certificate or scrip No. 232, letter 'E,' for 160 acres, on the following described lands: Lot 1, section 13, and N. E. $\frac{1}{4}$ N. E. $\frac{1}{4}$ S. W. $\frac{1}{4}$ N. E. $\frac{1}{4}$, and lots 1 and 2 (N. I. B.) of section 14, in township 37 north, of range 14 east, 3d P. M., Ill., in the District of Lands, subject to . . . . . . . . at . . . . . . . . containing $183\frac{75}{100}$ acres, in satisfaction of the attached certificate or scrip.

"Given under my hand, this 21st day of May, 1878.

JULIA GAMELL (formerly Martin.)<br>By Sextus N. Wilcox, <i>her attorney in fact.</i>"

"GENERAL LAND OFFICE,<br>"WASHINGTON, D. C., <i>July 8th, 1878.</i>

"I hereby certify that the within scrip has, this 8th day of July, 1878, been located on lot 1, section 13, and N. E. $\frac{1}{4}$ of N. E. $\frac{1}{4}$, and S. W. $\frac{1}{4}$ of N. E. $\frac{1}{4}$, and lots 1 and 2 (N. I. B. L.)

of section No. 14, in township No. 37 north, of range No. 14 east, 3d P. M., Ill., containing $183\frac{75}{100}$ acres, agreeably to the act of 17th July, 1854, and by the party duly authorized to make the location.

J. A. WILLIAMSON,

*Commissioner, Register and Receiver, ex-officio,*
*under act of 3d of March, 1877."*

"DEPARTMENT OF THE INTERIOR,

"GENERAL LAND OFFICE, *September 18, 1878.*

"I, J. A. Williamson, commissioner of the general land office, do hereby certify that the annexed copies of Sioux half-breed scrip locations are true and literal exemplifications from the records of this office.

"The said copies represent nine certificates to locate land under act of Congress of July 17, 1854. Eight of the certificates have been entertained for land in Kalamick lake, township 37 north, range 14 east, 3d P. M., Illinois, to-wit, Nos. 232, E, 160 acres, etc., etc.     *     *     *

"In testimony whereof, I have hereunto subscribed my hand, and caused the seal of this office to be affixed, at the city of Washington, on the day and year above written.

J. A. WILLIAMSON,

[Seal.]          *Commissioner of General Land Office."*

To the introduction of which above named certificate and entry in evidence, the defendants, by counsel, objected, on the ground that the record was incomplete, in not containing a copy of the scrip referred to, and was otherwise incompetent and immaterial, and which objection was sustained by the court. To the ruling of the court excluding the evidence plaintiff excepted.

The plaintiff, to further maintain the issues on his part, offered in evidence a power of attorney, executed by Julia Gamell, (formerly Martin,) and Francois Gamell, her husband, authorizing Sextus N. Wilcox, their attorney in fact, to

sell the land in question, and other lands belonging to them,—to the introduction of which the defendants, by their counsel, objected, on the ground that it was immaterial, and which objection was sustained by the court,—to which ruling of the court the plaintiff, by his counsel, then and there excepted.

The plaintiff, further to maintain the issues on his part, offered in evidence a certain deed, executed by Julia Gamell, (formerly Martin,) and Francois Gamell, her husband, by Sextus N. Wilcox, their attorney in fact, purporting to convey the lands in question, and other lands, to George G. Wilcox, the plaintiff, and signed, sealed and delivered on the 10th day of June, 1878. To the introduction of the deed in evidence counsel for defendants objected, on the ground that the evidence was immaterial. The objection was sustained, and the plaintiff excepted.

Mr. H. O. McDAID, for the appellant.

Messrs. LYMAN & JACKSON, and Messrs. COHRS & DEARBORN, for the appellees.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

The only question properly presented by this record is, whether the court erred in excluding the exemplification of the records of the general land office, signed by the commissioner, under his official seal. This document was the foundation of the plaintiff's title, and if it was competent evidence, the decision will have to be reversed.

But one specific objection was made to the evidence by the defendant at the time it was offered, and that was, that no copy of the scrip was attached to and formed a part of the offered evidence. We do not think that the evidence was defective for the reason it did not contain a copy of the scrip. The object of the testimony was to show that Julia Gamell (formerly Martin) had located the land in question under

the act of Congress of July 17, 1854, and we do not perceive how a copy of the scrip could throw any light on that subject had it been a part of the record. The act provides that the scrip may be located upon any of the lands within the reservation not occupied by actual settlers of the half-breeds or mixed bloods, etc., or upon any other unoccupied lands subject to preëmption or private sale, or upon any other unsurveyed lands not reserved by the government, upon which they have respectively made improvements. The act also provides that no transfer or conveyance of any certificate or scrip shall be valid.

The record offered in evidence for the purpose of showing a location of the land, contains, first, the application of Julia Gamell (formerly Martin) to locate scrip No. 232, letter "E," for 160 acres of land, on the land in question. This application was made on the 21st day of May, 1878. The record contains, second, the certificate of the commissioner of the land office, who was also *ex-officio* register and receiver, showing that the scrip was located on the 8th day of July, 1878, on the land in controversy, under the act of July 17, 1854. In his certificate to this exemplification of the record he certifies that eight of the certificates have been entertained for land in Kalamick Lake, township 37 north, range 14 east, third principal meridian, Illinois, to-wit: Nos. 232, letter "E," 160 acres. Had a copy of the scrip been made a part of this exemplification of the record, we fail to see how it could throw any light on the transaction. Suppose a quarter section of land is entered by a person holding a land warrant, the record of the entry made by the register and receiver is the proper evidence that such person has purchased the land of the government, and not a copy of the land warrant with which the land was entered. The same principle applies here. The record of location made by the commissioner, who was *ex-officio* register and receiver, under the scrip, is the evidence of that fact, and a copy of the scrip attached to

the record would, in our judgment, have no more bearing on the question of location than a copy of a land warrant would where an entry of land has been made under a land warrant. The scrip is used by the person to whom it is issued, in the one case, as a payment for the land upon which it is located. In the other case the land warrant is used as payment, and when it becomes necessary to prove title from the government, we do not think a copy of either would be material. In *Seely* v. *Wells*, 53 Ill. 120, it was held that "the exemplification of the books and records of the general land office, certified under the seal of the office, is competent evidence in our courts." Indeed, there can be no controversy upon that question.

It is, however, said that the certificate of the commissioner shows that the land was not located, but entertained for location. It is true that the commissioner, in his certificate, says eight of the certificates have been entertained for land, but in the record he expressly certifies that the scrip was located. It is as follows: "I hereby certify that the within scrip has this 8th day of July, 1878, been located on,"—then follows the description of the land. This language is so plain there can be no doubt in regard to the meaning of the record. We think the record upon its face showed the location of the land in controversy, and that the court erred in excluding it as evidence.

But it is said if the record was sufficient on its face to be admitted in evidence, it was incompetent for the purpose of establishing title, as it was void on its face. This position is predicated on the supposed fact that the land in question is located in Calumet lake, a navigable body of water, and hence not subject to entry. Whether this land was subject to preëmption or private entry, or whether it was or was not subject to location under the scrip, is a matter that does not arise on this record. There are many things that the court may take judicial notice of. For example, of the division of

the State into counties, of the townships in the county, as numbered, according to the government survey, and many things of a like character; but whether a lake existed where this land is situated is a matter which we can not know, unless it is established by the record. If this land was not subject to location, under the act of 1854, for the reason that it was a part of Calumet lake, or if the land had passed from the government, those and all kindred questions were matters of defence on the trial.

We merely decide, on this record, that the court erred in excluding the exemplification of the record signed by the commissioner and offered in evidence by the plaintiff, and for that error the judgment will be reversed and the cause remanded.

*Judgment reversed.*